DEERE & CO. v. WOLFF, DEFENDANT, AND THE SHENANDOAH NATIONAL BANK, INTERVENOR.

1. **Contract of Sale:** ILLEGAL CONSIDERATION: COMPOUNDING FELONY: WHAT IS NOT: RETURNING FORGED NOTES UPON PAYMENT. The holder in good faith of a forged note, received from the forger as collateral security, may lawfully deliver it to the forger, upon payment being made by him; and, although such delivery necessarily puts it in the power of the forger to destroy or suppress the paper, and, to that extent, to hinder and prevent his prosecution, and although such necessary consequence must be presumed to be intended by the holder of the paper when he so delivers it, yet such delivery is not the compounding of a felony, within the meaning of § § 3951, 3952 of the Code. And in this case, where the alleged forger paid the notes by the sale and transfer to the holder thereof of certain personal property, *held* that such sale could not be set aside by an attaching creditor of the alleged forger, on the ground that the consideration thereof was illegal, and that the transaction was, therefore, void, and vested in the transferee no title to the property; and instructions given to the jury in this case, (see opinion,) not in accord with these views, were erroneous.

2. **Compounding felony:** EVIDENCE: FELONY MUST BE ESTABLISHED. One cannot be directly or collaterally adjudged guilty of compounding a felony, unless it has been established that the other party to the unlawful compact is guilty of the felony. It is not sufficient that he be

charged or indicted merely. So *held* in this case, where it was sought to annul a sale on the ground that the consideration thereof was the compounding of a felony, and, therefore, unlawful.

### Appeal from Page Circuit Court.

#### FRIDAY, OCTOBER 24.

ACTION at law, wherein certain personal property was seized upon an attachment issued against defendant, Wolff. The Shenandoah National Bank intervenes in the action, claiming ownership of the property. A trial of the issues between plaintiffs and the intervenor resulted in a verdict and judgment for plaintiffs. The intervenor appeals.

*Stockton & Keenan, T. E. Clark* and *W. S. Strawn,* for appellants.

*James McCabe,* for appellees.

BECK, J.—I. The personalty in question was seized upon a writ of attachment issued against Wolff. The intervenor claims it under purchase from Wolff, made before the commencement of the suit and issuing of the attachment. In answer to the intervenor's petition, plaintiffs allege that "all claim or title of intervenor on said property is derived from defendant, H. S. Wolff, but that Wolff never assented to part with any title or interest in said property to intervenor, and that all power of assent by said Wolff given was obtained by intervenor by duress. * * * All claim of title or interest that intervenor has to or in the property in controversy was and is founded upon an illegal consideration, in that the same was secured by intervenor through a contract tainted with an agreement to stifle and hinder criminal prosecution for the crime of forgery against H. S. Wolff, from whom all of intervenor's claim is derived." It will be observed that the issues involve the legality of the

*Marginal note:* 1. CONTRACT of sale : illegal consideration : compounding felony: what is not : returning forged notes upon payment.

contract of purchase of the property, which plaintiffs insist is void.

There was evidence tending to prove that intervenor held certain promissory notes executed by Wolff for money loaned by it; that Wolff transferred to the bank, as collateral security, certain other notes, the signatures to which, or indorsements thereon, were forgeries; that the officers of the bank and its attorney, becoming informed of the character of this paper, secured from Wolff, to secure his indebtednes to the bank, a mortgage upon real estate, and a chattel mortgage upon certain personal property to secure certain claims it held against him for collection. Subsequently Wolff transferred and delivered the personal property to the bank in satisfaction of claims held by it. There was evidence in regard to the value of the property and other matters, which need not be here referred to. No direct evidence was introduced showing that the mortgage and transfer of the personal property was extorted from Wolff through fear, on his part, of prosecutions for forgery to be instituted by the bank. Nor was there any such evidence of an agreement by the bank, in consideration thereof, not to prosecute him, nor to give evidence against him, to conceal evidence of forgery, or to "stifle and hinder" prosecutions therefor. It is claimed that the facts above stated and referred to are circumstances from which such illegal agreement may be inferred.

II. The circuit court gave to the jury the following THE SAME. instructions:

"10. If the jury find from a preponderance of the evidence that the intervenor herein, at the time of the alleged purchase of the property in controversy, held promissory notes purporting to have been executed by third parties, which they had received either as collateral or by purchase from H. S. Wolff, and if you further find that such notes or any part of them were in fact forged, and the said Wolff had in fact forged the same, or was charged with the forgery thereof, and that said intervenor, by its president or cashier,

or either one of them, had knowledge of such forgeries, and that said H. S. Wolff was either guilty thereof or charged with the same; and if you further find that the intervenor, through its officers or attorney, acting for intervenor at the time, agreed to surrender, and did surrender, the said forged notes to the said H. S. Wolff in consideration of the sale and delivery of the property in controversy by said Wolff to intervenor, with the intent or purpose on the part of such officers, or officer, or attorney, acting at the time for intervenor, to place the evidence of such crime of forgery in the possession of said Wolff, to enable him to destroy or suppress the same, then such sale would be wholly void, and you should find for plaintiff.

"11.    The mere taking of security or receiving payment for a debt evidenced by a forged note, or secured by forged collaterals, would not in itself be unlawful, or render such transaction void.

"12.    The act of taking security or receiving payment of the debt must be coupled with some act done which would have in its tendency the effect of preventing and hindering the prosecution of such crime, and done with the intent or purpose of hindering or preventing such prosecution.

"13.    And, before you can find for plaintiff upon such issue, you must find the purchase of the property in controversy was coupled with the surrender of forged notes, with the intent or purpose upon the part of the officers or officer of intervenor, or its attorney, acting for it at the time, to hinder or prevent the prosecution of said Wolff for the alleged crime of forgery; and such surrender with such intent or purpose should be established by a clear and fair preponderance of the evidence. It need not necessarily be established by direct proof; if it is established by the proof of such facts and circumstances as, taken together, would establish this, it would be sufficient. Proof that would create a bare suspicion of such intent would not be sufficient."

The jury were directed by these instructions that their verdict should be for plaintiff, if they found the forged notes were surrendered in consideration of the transfer of the property, with the intent on the part of defendant's officers "to place the evidence of such crime of forgery in the possession of said Wolff, to enable him to destroy or suppress the same," or if they found the purchase of the property was "coupled with" the surrender of forged notes, with the intent on the part of the officers of the bank "to hinder and prevent" the prosecution of Wolff for forgery, or if they found the surrender of the notes was coupled with some act which would have a tendency to that effect. The doctrines of the instructions, stated generally, are these:

If one holding a forged promissory note, given him as collateral security by the guilty party, who is authorized to pay it, receives payment thereof from such party by the transfer of property, and surrenders to him the note, with the intent to place the evidence of the crime in the hands of the guilty party, that he may destroy or suppress it, or, if the payment of the note was united with its surrender, or with some other act tending to hinder or prevent a prosecution for forgery, with the intent to hinder or prevent such prosecution, the contract of transfer is void.

It must be here observed that the evidence referred to in the instructions, together with the foregoing statement of their doctrines, must be regarded as referring to the forged notes, as there is not a particle of evidence tending to show that any other instrument of proof was placed in Wolff's hands. If it is not so understood, the instructions are plainly erroneous, for the reason that there is no evidence tending to prove facts to which they are applicable. We will, therefore, discuss the instruction, in the view that they are restricted to the surrender of the alleged forged notes.

We will proceed to inquire into the correctness of the rules of the instructions.

III. It is a familiar rule of the law that illegal contracts

—such as are based upon unlawful considerations, or are made in contravention of the law, or of public policy, or for purposes criminal or immoral in their nature, are void. We are to inquire whether the acts contemplated by the instructions bring the contract under which the property in question was transferred within this rule. These acts are,—(1) the surrender of the forged notes upon payment thereof, with the intent of placing them in the possession of the guilty party, so that he could destroy them; (2) the receipt of payment of the notes, and, thereupon, their surrender, with the intent of preventing and hindering, or that the act should tend to prevent or hinder, the prosecution of Wolff for the crime of forgery.

THE SAME.

We will consider these acts separately, in order to determine whether they are illegal.

1. Surely a party holding in good faith forged paper, (and it is not claimed that the bank did not so hold the paper in question,) may accept payment in money, or receive payment in property, from the guilty party, who is bound upon the paper for the payment thereof. It cannot be that the holder must lose his debt, for the reason that the law forbids him to receive payment. This proposition will not admit of argument. Upon receiving payment of paper, the law requires the holder to deliver it to the person paying it. Now, if he may accept payment from the forger, he may surrender the paper to that person. The surrender of the paper would, in the language of the instruction, "enable" the forger "to destroy or suppress" the paper. The holder may intend to place the paper in the hands of the forger, and thus *intend* "to enable him to destroy or suppress it," without an unlawful purpose. The delivery of the paper is lawful; but it gives the forger an opportunity to destroy it, and he is *enabled*, by the delivery, to do so. The holder, therefore, could not deliver the paper without the purpose of enabling, thereby, the guilty party to destroy or suppress it. But, as we have seen, the delivery of the paper was a lawful

act.   The instructions do not contemplate that it was done with the intent to procure, induce or cause the destruction of the paper, which doubtless would be unlawful.   It is a very different thing to induce  or  cause an  act, and to give an opportunity to do it.   One may innocently and lawfully do an act, when inducing  or  causing it would be unlawful. The instructions erroneously express the thought that the destruction or suppression of the notes would amount to a destruction or suppression of the evidence of the forgery.   It is true that it would amount to the destruction or suppression of an instrument which, if in existence and not in the hands of the accused, must be produced at the trial upon an indictment for the offense.   But, if destroyed or withheld by the accused, secondary evidence of its contents may be introduced.   3 Greenleaf's Ev., § 107.   This authority presents the suggestion that the suppression of the paper may increase the difficulty of proving the crime.   This difficulty extends no further than to require secondary evidence of the contents of the paper, and to render it impossible to introduce proof by the comparison of the signature to the instrument with genuine signatures.   But always, when the accused claims that the signature is genuine, the paper is wanted by him for the purpose of comparing the hand-writing with the true signature of the accused.   We discover nothing in the first class of acts, which are now under consideration, to authorize the conclusion that the bank did anything in contravention of the law, or of public policy, or for purposes criminal or immoral in their nature.

2. The same course of reasoning leads to the same conclusion as to the acts contemplated in the second class above designated.   If the bank was lawfully authorized to deliver the forged paper upon its payment by Wolff, and such delivery hindered, or tended to hinder, a prosecution, this was the necessary result of the delivery, and, if intended, such intent was not in violation of law, public policy or good morals, as it was entertained in the exercise of the lawful right of the

bank; for the delivery of the paper, which is inseparable from the intent, was done in obedience to the requirement of the law imposing the duty upon the holder of paper to surrender it upon payment, when required to do so.

IV. The acts of the bank contemplated by the instructions are not offenses under the statute of this state. They do

THE SAME. not constitute the compounding of a felony, which occurs when " any person, having knowledge of the commission of, an offense punishable by imprisonment in the penitentiary"   *   *   *   takes any money, or valuable consideration, or gratuity, or any promise therefor, upon an agreement or understanding, express or implied, to *compound* or conceal *such offense, or not to prosecute the same, or not to give evidence thereof.*" Code, § § 3951, 3952. The delivery of a forged promissory note to the forger upon payment by him, which he was authorized to make, "with the intent to enable him to destroy and suppress it," and with the intent to " hinder and prevent " the prosecution of the forger, does not constitute an offense under the provisions of the statute above cited. These acts, and none others, are contemplated in the instructions to the jury given in this case. They cannot be the foundation of a claim that the contract for the purchase of the property was void for the reason that the officers of the bank, under the sections of the Code above cited, were guilty of compounding a felony in the purchase of the property under the circumstance and upon the agreement contemplated in the instructions.

V. The tenth instruction directs the jury that the rules therein expressed are to be applied, in case they find that

2. COMPOUND-ING felony: evidence: felony must be established. Wolff was *charged* with the crime of forgery. This is obviously incorrect. Before the bank or its officers can be found guilty of any wrong or crime in connection with the transaction, it must be established that Wolff was guilty of forgery. A mere charge of guilt, or an indictment for the crime, would not authorize the conclusion that there had been any compounding of a felony,

or any act done by the bank or its officers contrary to law or public policy, or against good morals. It is proper to remark that this objection is not urged in argument by the intervenor's counsel.

The instructions, so far as they are not in accord with these views, are erroneous. Other objections presented by counsel need not be considered, for the reason that the points we determine are decisive of the case, and will probably dispose of it finally upon another trial.

REVERSED.