LIVE STOCK NATIONAL BANK OF SIOUX CITY, IOWA, Appellant, v. J. M. COLLINS, JENNIE M. COLLINS, ET AL., Appellees, and J. M. COLLINS and JENNIE M. COLLINS, Cross-Petitioners, Appellants.

**Mortgages:** PRIORITY OF LIENS: CONTRACTS FOR COMPOUNDING OFFENSES. In this action two commission men guilty of fraud in selling the cattle of an owner at less than he was to receive, agreed to pay the owner the value of the cattle and an additional sum as expenses in settlement of his claim, each to pay one-half thereof. A third party borrowed the money necessary to make the payment and received a note and mortgage from one of the commission men to pay the amount which he was to furnish, and arranged with others for the payment of the loan. *Held,* that the notes and mortgage were the absolute property of such third person and not held by him as collateral, and that his mortgage was superior to a junior mortgage.

It is also held that the agreement for settlement was not within the provisions of the code prohibiting an agreement to compound or to conceal an offense or to abstain from a prosecution thereof.

*Appeal from Winneshiek District Court.*—HON. L. E. FELLOWS, Judge.

TUESDAY, JANUARY 11, 1910.

REHEARING DENIED, MONDAY, APRIL 11, 1910.

THE opinion states the case.—*Affirmed.*

*N. Willett, Milchrist & Scott,* and *John R. Carter,* for appellant.

*D. H. Sullivan,* and *Wolfe & Wolfe,* for appellees.

SHERWIN, J.—This action is in equity to set aside a judgment in favor of the defendant T. F. Griffin, and against his codefendants herein, J. M. and Jennie M. Collins. It is alleged that the judgment was procured by fraud, and that the note and mortgage upon which it was rendered were executed for the purpose of cheating and defrauding the creditors of the said defendants J. M. and Jennie M. Collins. It is further alleged, that the property covered by the foreclosed mortgage belonged to Jennie M. Collins, and that the note and mortgage given to said Griffin were to be used by him as collateral security for money he was to borrow for the use and benefit of J. M. Collins in compounding a felony. Separate answers were filed by Griffin, Weston, and J. M. and Jennie M. Collins. Jennie M. Collins pleaded that the note and mortgage were procured from her by duress, and they both pleaded that the note and mortgage were made and delivered as collateral security for $7,840 borrowed of the First National Bank of Sioux City by one Flanders, and that said sum had been paid before the foreclosure of the mortgage. Other issues tendered by the pleadings, will be noticed where necessary for a proper understanding of the case. The principal questions for determination herein are of fact; and, as they are at first glance somewhat complicated, we shall state them with more particularity than we otherwise would.

In 1904, and for some years prior thereto, a firm known as the Collins Commission Company was engaged in the live stock commission business at the Sioux City stockyards. The defendant J. M. Collins was a member of the company and the manager of its business. His wife, the defendant Jennie M. Collins, at times worked in the office of the company, acting as its clerk or bookkeeper. In 1904 one W. S. Flanders was also in the live stock business in Sioux City. One P. H. O'Neill was a cattleman residing near Faulkton, S. D. In the fall of

1904 he shipped to the Collins Commission Company a large number of cattle, which were sold by said company at a price greatly below their market value, and the proceeds of the sale were accounted for. O'Neill claimed that he sold the cattle to the Collins Commission Company, while said company claimed that they were shipped to it to be sold on commission, and that they in fact were sold for $8,000 or $9,000 less than O'Neill claimed that he was to receive for them from the company. W. S. Flanders assisted O'Neill in finding a market for these cattle, and O'Neill paid him a certain amount per head for such assistance. After O'Neill had received returns for his cattle, he immediately brought suit against W. S. Flanders for the difference between the sum he had actually received for the cattle and the amount which he claimed he should have received. This suit was brought in South Dakota, and was aided by attaching certain land owned by Flanders. Still later, in February, 1905, O'Neill came to Sioux City and employed counsel to investigate the matter, and together they secured evidence tending to show that both Flanders and Collins had been guilty of fraud, if not of a crime, in the deal with O'Neill. The defendants J. M. and Jennie M. Collins were at this time living at St. Joseph, Mo. O'Neill through his counsel, however, found Flanders, and made a demand on him for $12,000 on account of the transaction, which sum was nearly $4,000 more than the balance claimed to be due for the cattle. Flanders at first refused to pay any sum, whereupon he was advised that the amount must be paid at once, or criminal proceedings would be instituted. Collins suspected from the first that there might be trouble over the matter, and before moving to St. Joseph he employed the law firm of Sullivan & Griffin to look after his interests should trouble arise. The same law firm was also employed by Flanders when the demand was made on him by O'Neill. The firm was

advised that it would be necessary to have Collins present for an adjustment of O'Neill's claim, and they sent for him. He came to Sioux City at once, and he and Flanders finally agreed to settle O'Neill's demand by paying him $10,000 cash, which was about $1,700 more than was due for the cattle alone. Of this amount something over $2,000 was in the hands of an Omaha, Neb., commission firm, and the balance had to be raised by Flanders and Collins. It was agreed that each should pay one-half thereof. The whole amount which they were to pay had to be borrowed, and they both arranged to have Mr. Griffin, of the firm of Sullivan & Griffin, get it for them. Collins and Flanders had theretofore had a similar live stock transaction with one Jones, and he was also demanding a settlement thereof from them. They thought his demand could be settled for $1,000, and in arranging for the loan to close up the O'Neill matter, this additional sum was provided for, and each was to pay $500 thereof. Collins and Flanders were jointly indebted on a note held by one of the banks, and it was agreed between them that Collins should take care of the note, and that Flanders would equalize the matter by furnishing so much more of the money necessary to settle the O'Neill demand. Collins also owed the firm of Sullivan & Griffin $500, and this was also to be taken care of. As a result of the agreements between Collins and Flanders, Collins was to actually furnish $3,310 of the money necessary to settle the O'Neill demand, and Flanders the balance. And as a result of the other agreements Collins was to secure Griffin for such amount and an additional amount of $1,000, which included the two items, the $500 which it was thought would settle his share of the Jones demand, and the $500 which he owed the firm of Sullivan & Griffin. In accordance with these several agreements Collins executed a promissory note to Griffin for $4310, and to secure the payment thereof Jennie M. Collins exe-

cuted a mortgage on her interest in certain lands in Winneshiek County. Flanders was unable to personally secure Griffin, and his son, J. A. Flanders, came to his assistance. Griffin borrowed the necessary money, $7,840, from the First National Bank of Sioux City, and gave a note therefor, signed by himself and J. A. Flanders, and a real estate mortgage securing the same executed by said J. A. Flanders. Griffin also deposited the note and mortgage given to him by Mr. and Mrs. Collins as collateral security for the loan. The $7,840 note was made on the 25th day of February, 1905, and was due in thirty days. It was paid in June, 1905. Collins was unable to furnish any part of the amount, and J. A. Flanders and his brother Robert in fact furnished the entire amount to Griffin, who paid the note, and returned to J. A. Flanders his mortgage. Thereafter J. M. and Jennie M. Collins executed to the plaintiff bank their notes and a third mortgage on Mrs. Collins' interest in the Winneshiek County land, and still later Griffin commenced an action to foreclose the mortgage given to him by Mrs. Collins. The plaintiff bank was made a party defendant, and duly served with notice of suit. No defense was made to the action, and there was a judgment and a sale thereunder. The certificate of sale was thereafter assigned to the defendant Weston to secure an indebtedness due him from W. S., A. R., and J. A. Flanders on notes executed by them in September, 1905. The indebtedness for which these notes were given, however, was in no way connected with the O'Neill matter, so far as the record shows. The certificate was assigned to Weston under an agreement between J. A. Flanders and Griffin, as we understand the record.

The appellant claims that, after it received notice of the foreclosure suit of Griffin, its attorneys called upon Griffin for the purpose of finding out whether the mortgage was a valid one and the note secured thereby unpaid,

and was informed that such was the fact, that relying upon such representations no defense was interposed thereto, and that the representations were false and fraudulent. There is a conflict in the evidence as to whether such representations were in fact made. But if it be conceded that they were, we are of the opinion that they were not false or fraudulent, and that the foreclosure should not be set aside on account thereof. We have given the entire record the most careful examination and consideration, and we are firmly convinced therefrom that Griffin undertook to and did furnish the money to help Collins out of a situation that Collins at least supposed to be very dangerous. Under the agreement between Collins and Flanders Collins was to pay one-half of the balance to be paid to O'Neill, and Griffin agreed with Collins to furnish the money on his own credit. Collins was not lending his credit to help Flanders out of a bad situation. They were equally involved, so far as this record discloses, and each was taking care of his own end of the transaction. Neither of them could raise the money on his own credit or security, and hence Griffin undertook to raise it for them on his own credit. And he did do so with the assistance of J. A. Flanders. The Collins note and mortgage were given to Griffin to pay him for the amount which he was to furnish, and did in fact furnish, and pay over to O'Neill for Collins. Collins had the money thus paid out for him, and his note to Griffin and the mortgage given to secure the same were the absolute property of Griffin, and were not held by him as collateral security merely. Even W. S. Flanders was under no obligation to pay for Collins. And if J. A. Flanders, or some one else, furnished Griffin the money to take up the note given to the First National Bank, it could make no difference to Collins because he had already received full value for his note, in strict accord with their agreement. Any arrangement, therefore, which Griffin and J.

A. and Robert Flanders made for the payment of the note held by the bank, and the return therefor which should be made by Griffin, was a matter in no way concerning Collins or his creditors.

As we have heretofore said, Jennie M. Collins pleaded that the mortgage in question was executed by her under duress. The evidence does not sustain the claim. Nor is there evidence sustaining the claim that the note and mortgage in question were given for the purpose of compounding a felony. O'Neill had a valid claim for something over $8,000, and compelled Collins and Flanders to pay him about $1,700 for his trouble and expense in the matter. But there is nothing in the record tending to show that he entered into any such agreement as is prohibited by section 5301 of the Code, which punishes any one who agrees to "compound or conceal the offense, or to abstain from a prosecution therefor, or to withhold any evidence thereof." There is no question of contribution among wrong-doers in this case.

The judgment of the trial court is right, and it is *affirmed.*