F. N. COTTEN, Appellee, v. WILLARD H. HALVERSON, Appellee, et al., Appellants.

CONTRACTS: Legality of Object or Consideration—Compounding Offense. The plea that an obligation is invalid because executed in consideration of the compounding of a crime necessitates proof of an *agreement*, express or implied, (1) to compound or conceal the offense, or (2) not to prosecute the same, or (3) not to give evidence thereof.

ACTIONS: Consolidation—Discretion of Court. The court may be amply justified in refusing to incumber and confuse the trial of a distinct issue in mortgage foreclosure with the trial of a crosspetition by one defendant against a codefendant.

Headnote 1: 13 C. J. pp. 453, 761, 779; 27 Cyc. p. 1129. Headnote 2: 31 Cyc. p. 223.

*Appeal from Polk District Court.*—O. S. FRANKLIN, Judge.

MARCH 16, 1926.

ACTION to foreclose a mortgage on certain real estate in Polk County, Iowa. From a decree granting the relief prayed, certain of the defendants appeal.—*Affirmed.*

*Howard L. Bump,* for Volney Diltz, Trustee, appellant.

*Fred F. Keithley,* for F. N. Cotten, appellee.

*Mulvaney & Mulvaney,* for Halversons, appellees.

*George E. Brammer,* for Shaffer State Bank, appellee.

*J. L. Witmer,* for Security Trust & Savings Bank, appellee.

*Harold S. Thomas,* for C. S. Bogle, appellee.

ALBERT, J.—I. In 1922, appellee Cotten was the owner and holder of three separate promissory notes secured by mortgages, amounting in all to approximately $10,000. Among these were a mortgage and note for $3,500, cover-

1. CONTRACTS: legality of object or consideration: compounding offense.

ing 120 acres of land in Warren County, Iowa, purporting to be executed by one Carl A. Christensen and wife. These notes and mortgages

had been bought by Cotten, at some previous date, from Willard H. Halverson. Cotten desired to dispose of the Christensen mortgage, and approached the Security Loan & Investment Company, of Des Moines, Iowa, with the idea of selling the same. The president of that company was struck by the familiarity of the name and the description of the property in the mortgage, and on investigation found that his company was the holder of a $5,000 mortgage made by the same parties on the same land. Further investigation disclosed that Christensen was not the owner of the land, that the abstracts accompanying the loans were false, and that the entry of recording on the back of each mortgage was false. Thereupon, on the 14th of August, 1922, Cotten approached Halverson, called his attention to these matters, and requested him to take up the three mortgages and notes. Halverson claimed that the difficulties were not of his making, but that some other person was responsible therefor. However, he paid Cotten $4,000 in cash at one time, and $900 at another, and executed the mortgage and note in suit for $5,778.50. It seems to be conceded by all parties that the three mortgages formerly held by Cotten, which were turned over to Halverson, together with the notes accompanying the same, were all forgeries. Halverson was subsequently adjudged a bankrupt, and his trustee is a party to this action and one of the appellants.

The Shaffer State Bank held a mortgage subsequent to the Cotten mortgage, as did Bogle, another appellee. The trustee in bankruptcy filed a cross-petition herein against some of his codefendants. A motion was made to consolidate it in this action, and later, a motion was made by appellee Cotten to strike the cross-petition from the file. The motion for consolidation was overruled, and the motion to strike was sustained. The rulings on these motions are assigned as errors.

The real defense in the case is that the mortgage and note sued on herein were given under a promise, agreement, or understanding, expressed or implied, between Cotten and Halverson, for the purpose of compounding or concealing a felony, or not to prosecute the same, or not to give evidence thereof; that, therefore, the consideration for the mortgage and note was

illegal. To this latter proposition we will first give our attention.

While these matters arose under the Code of 1897, the identical sections involved herein occur in the Code of 1924, as follows:

"Section 13168. If any person, having knowledge of the commission of any offense punishable with imprisonment in the penitentiary for life, take any money or valuable consideration or gratuity, or any promise therefor, upon an agreement or understanding, expressed or implied, to compound or conceal such offense, or not to prosecute the same, or not to give evidence thereof, he shall be imprisoned in the penitentiary not more than six years, or be fined not exceeding one thousand dollars."

"Section 13169. If any person, having knowledge of the commission of any offense punishable by imprisonment in the penitentiary for a limited term of years, is guilty of the offense described in the preceding section, he shall be imprisoned in the county jail not more than one year, and be fined not exceeding four hundred dollars."

"Section 13757. A person may be indicted for having, with the knowledge of the commission of a public offense, taken money or property of another, or a gratuity or reward, or engagement or promise therefor, upon agreement or understanding, express or implied, to compound or conceal the offense, or to abstain from a prosecution therefor, or to withhold any evidence thereof, though the person guilty of the original offense has not been indicted or tried."

An analysis of these three sections shows that, to make any one of them operative, there must be an agreement or understanding, expressed or implied, (1) to compound or conceal such offense, (2) not to prosecute the same, (3) or not to give evidence thereof. It will be noted that all of said statutes are founded on an agreement or understanding, and, in event that there is no such agreement or understanding, it necessarily follows that none of these three sections would be violated. It is equally true that, although there might be an agreement between the parties, if the agreement was other than that of compounding or concealing the offense, not to prosecute the same, or not to

give evidence thereof, then none of these statutes would operate. We have, on numerous occasions, construed these several sections, and nowhere have we attempted to enlarge or limit their meaning, but in all instances have held to the strict letter of the statute, which is, as suggested above, that there must be an agreement or understanding, either expressed or implied, as a foundation for such defense as made herein. Whether such agreement or understanding, expressed or implied, existed in the given case is a jury question. *Shaulis v. Buxton*, 109 Iowa 355; *Joyce Co. v. Rohan*, 134 Iowa 12; *Baird v. Boehner*, 77 Iowa 622; *Henry v. State Bank*, 131 Iowa 97. In *Peed v. McKee*, 42 Iowa 689, we held that a mortgage and note given to cover a son's embezzlement, accompanied with an expressed agreement that the son should not be prosecuted, was void. The case of *Deere & Co. v. Wolff*, 65 Iowa 32, is exactly parallel in principle to the one at bar. Wolff had borrowed money from the Shenandoah National Bank, and gave his note therefor, with which certain other notes were given as collateral, the signature and indorsement to which latter notes were forged. When the bank learned of this, and confronted Wolff with the facts, he gave them a mortgage on certain real estate and a chattel mortgage on certain personal property. Subsequently, Wolff transferred and delivered the personal property to the bank in satisfaction of the claims held by it. We there said:

"No direct evidence was introduced showing that the mortgage and transfer of the personal property was extorted from Wolff through fear, on his part, of prosecutions for forgery to be instituted by the bank. Nor was there any such evidence of an agreement by the bank, in consideration thereof, not to prosecute him, nor to give evidence against him, to conceal evidence of forgery, or to 'stifle and hinder' prosecutions therefor.''

It was held that the mortgage of the bank was valid. A similar holding was announced by this court in the case of *Live Stock Nat. Bank v. Collins*, 147 Iowa 107.

These rules being applied to the case at bar, it was incumbent upon the appellants setting up this defense to prove by a preponderance of evidence that, at the time the mortgage and note sued on herein were executed and delivered by Halverson

to Cotten, there was an understanding and agreement between them, either expressed or implied, that Cotten was to compound the crime, or conceal the forged character of the mortgages and notes held by him, or that such agreement was that Cotten would not prosecute Halverson, or that Cotten would not give evidence on a charge of forgery.

Halverson was not a witness in the case. Cotten strenuously denied that there was ever any such agreement or understanding between Halverson and him, and there is no direct testimony as to the existence of such agreement or understanding. If one is to be found, it must be deduced from the surrounding facts and circumstances shown by the evidence. We have searched the record with care, and are unable to find anything therein which, to our minds, would warrant such a deduction. The proof of such facts, if found, must be purely circumstantial; and in reality, the evidence most relied on is the evidence of one J..E. O'Brien, in which the witness says that Cotten stated to him, referring to Halverson, that he (Cotten) had kept him (Halverson) out of trouble, and did not intend to do it again. To understand the force of.this statement, some further explanation is necessary.

Cotten had known Halverson for many years, was friendly with him, and attempted to help him in a financial way. Through an agreement between them, Halverson's residence property in Des Moines was deeded to Cotten, and Cotten advanced money to Halverson to pay off certain of Halverson's debts, including part of the mortgage held by the Security Loan & Investment Company, above referred to, and gave Halverson back a contract for the town property, Cotten to be repaid by Halverson in payments of $60 per month. It appears also in the record that Halverson had forged a release of the mortgage sued on herein, and filed the same for record. Later, Cotten discovered this release on record, with an acknowledgment purporting to have been taken by the witness J. E. O'Brien. Cotten interviewed O'Brien as to the taking of the acknowledgment to the release, and it was in a conversation about this release (in 1924) that this statement is said to have been made to O'Brien by Cotten. It is apparent, therefore, from the record that the statement that Cotten had kept Halverson out of trouble might

as well apply to the financial aid he gave him at the time he took over his town property, as to the transaction out of which the mortgage and note sued on herein grew. One is equally as probable as the other. Where it is attempted to prove a fact by circumstantial evidence, it is well settled that the theory claimed must exclude every other reasonable hypothesis. *Asbach v. Chicago, B. & Q. R. Co.,* 74 Iowa 248; *Johnson v. Corn Prod. Ref. Co.,* 157 Iowa 420, and cases therein cited.

We have searched the record in vain for any other testimony which would in any way support the appellants' contention herein. It is true that Cotten was probably satisfied in his own mind that the mortgages and notes bought by him from Halverson were forgeries, but this would not prevent him, in good faith, from collecting the same from Halverson if he could. The evidence shows that he did not proclaim the forgeries from the housetops, and why need he? He was limited and required by the statute not to make any agreement or understanding with Halverson to conceal these matters. He was not to make any agreement or understanding that he would not prosecute or testify. This is the limit placed upon him by law. He seems to have obeyed the letter of the law, and since he has so done, we see no reason why he should be penalized by declaring his mortgage and note void. It is true that the record shows that, after the making of this mortgage and note, Halverson pursued his nefarious practice, and sold numerous other forged mortgages and notes to other parties; but we are unable to see how this has any bearing on the question as to whether or not a prohibited agreement or understanding existed between Cotten and Halverson at the time of the making of the note and mortgage in suit. The appellants failed to sustain the burden of proof on them, and therefore the ruling of the district court was right.

II. With reference to the motion to consolidate, and the striking of the cross-petition hereinbefore referred to, so far as we are able to observe, there was nothing therein which would in any way interfere with the appellee's right

2. ACTIONS: consolidation: discretion of court.

of foreclosure. His stumbling block was the matter set up in the answers to his petition, and in the matters involved in his petition he was entitled to have

his case tried under the issues made, and not have it incumbered by litigation between some of the codefendants. The court was, therefore, right in its ruling refusing to consolidate.

As to the motion to strike the cross-petition, technically this ruling may have been erroneous; but appellants state in their argument that the actions between the codefendants were subsequently tried out, and went to judgment, so that nothing would be accomplished by holding that the court erred in striking the cross-petition.—*Affirmed.*

DE GRAFF, C. J., and EVANS and MORLING, JJ., concur.